UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KENNETH WHITE,

                      Petitioner,

     v.

UNITED STATES OF AMERICA,

                      Respondent.

**DECISION AND ORDER**
18-CV-1315S
13-CR-255S (1)

## I. INTRODUCTION

Presently before this Court is Petitioner Kenneth White's pro se Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255.  For the reasons discussed below, White's motion is denied.

## II. BACKGROUND

On November 20, 2013, a federal grand jury returned a 9-count indictment against White charging him with sex-trafficking crimes.  See Docket No. 1.

Nearly two years later, on September 2, 2015, White pleaded guilty to so much of Count 2 that charged him with sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591 (a)(1) and (b)(1).  See Docket Nos. 52, 54.  He did so with the benefit of a plea agreement, in which he agreed that he faced a statutory mandatory minimum term of imprisonment of 15 years and maximum term of imprisonment of life, a fine of $250,000, a mandatory special assessment of $100, and supervised release of at least five years and up to life.  See Plea Agreement, Docket No. 52, ¶ 1.

White's plea agreement further set out the United States Sentencing Guidelines ("U.S.S.G.") calculations.  White first agreed that his base offense level was 34 under

1

U.S.S.G. § 2G1.3 (a)(1).  See Plea Agreement, ¶ 8.  Next, he agreed that the 2-level increase under U.S.S.G. § 2G1.3 (b)(4)(A) applied because the offense involved the commission of a sex act.  Id. ¶ 9.

The parties then differed on whether the 2-level increases under U.S.S.G. § 2G1.3 (b)(3)(B) (use of computer to entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with a minor) and U.S.S.G. § 3B1.1 (c) (aggravating role as an organizer, leader, manager, or supervisor of criminal activity) applied, with the government maintaining that they did and White reserving his right to argue at sentencing that they did not.  Id. ¶¶ 10, 11.

Finally, White and the government agreed that the 2-level reduction for acceptance of responsibility in U.S.S.G. § 3E1.1 (a) and the 1-level reduction for substantial assistance in U.S.S.G. § 3E1.1 (b) both applied, and that White fell within criminal history category I.  Id. ¶¶ 13, 14.

In the end, White agreed that if the disputed increases applied, the total offense level would be 37, the criminal history category would be I, and he would face an advisory imprisonment range of 210 to 261[1] months.  Id. ¶ 15 (a).  He further agreed that if the disputed increases did not apply, the total offense level would be 33, the criminal history category would be I, and he would face an advisory imprisonment range of 180 months (the statutory minimum sentence).  Id. ¶ 15 (b).  White further acknowledged his understanding that he remained subject to the minimum and maximum statutory penalties, notwithstanding this Court's final determination of the disputed increases and final Guidelines calculations.  Id. ¶ 15 (c).

---

[1] Because the Guidelines range for a total offense level 37 and criminal history category I is 210-262 months, this Court assumes that the reference to 261 months was a scrivener's error.

White's plea agreement also addressed the parties' appeal rights.  White waived his right to appeal or collaterally attack any component of a sentence that fell within or was less than 210-261 months' imprisonment, no matter how the court determined the sentence.  Id. ¶ 22.  The government, in turn, waived its right to appeal any component of a sentence of 180 months' imprisonment or greater, notwithstanding the manner in which the court determined the sentence.  Id. ¶ 24.  The government also agreed to dismiss the open counts of the indictment at sentencing.  Id. ¶ 21.

White appeared for sentencing on May 18, 2016.  See Docket No. 85.  After reviewing the offense conduct, this Court turned to the Guidelines calculations.  It accepted the parties' base offense level and other agreed-upon calculations, including granting the government's motion for a 1-level reduction for substantial assistance under U.S.S.G. § 3E1.1 (b), and resolved the disputed Guidelines provisions in the government's favor, thus applying the 2-level increases in U.S.S.G. § 2G1.3 (b)(3)(B) and U.S.S.G. § 3B1.1 (c).  See Sentencing Transcript, Docket No. 98, pp. 11-15.  This Court further applied an additional 2-level increase under U.S.S.G. § 2G1.3 (b)(2)(B)—an increase the parties did not contemplate in the plea agreement—because White unduly influenced a minor to engage in prohibited sexual conduct.  Id. p. 12.  At that point, the Guidelines calculations were total offense level 39 and criminal history II[2], resulting in an advisory Guidelines imprisonment range of 235-293 months.  Id. p. 11.

---

[2] The parties understood in the plea agreement that White fell within criminal history category I.  See Plea Agreement, ¶ 14.  The probation officer determined that White qualified as criminal history category III.  See Presentence Investigation Report, Docket No. 87, ¶¶ 72-79, 85.  At sentencing, this Court denied White's objections to the probation officer's calculation of his criminal history category but granted his request to reduce his criminal history category under U.S.S.G. § 4A1.3 (b)(1), which allows for reduction if the defendant's criminal history category substantially over-represents the seriousness of his criminal history.  See Sentencing Transcript, p. 15.  Applying a 1-category reduction, this Court deemed White to be in criminal history category II.

This Court next turned to the government's motion for a 6-level reduction under U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553 (e) based on White's substantial assistance to law enforcement.  See id. pp. 15-16.  Paying due deference to the government's valuation of White's assistance, this Court granted the motion in its entirety.  See id.  This resulted in a final Guidelines calculation of total offense level 33 and criminal history category II, which yielded an advisory sentencing range of 151-188 months.  Id. p. 16.

After hearing from counsel and White, and after denying White's request for a sentence between 70 and 87 months, this Court sentenced White to 156 months' (13 years) imprisonment, 5 years' supervised release, a $100 special assessment, and no fine, fees, or costs.  See Sentencing Transcript, pp. 16-20, 40-43; Docket No. 85. This Court further granted the government's motion to dismiss the open counts of the indictment.  See Sentencing Transcript, p. 45; Docket No. 85.  The Clerk of Court entered judgment on May 20, 2016.[3]  See Docket No. 86.

White appealed only his sentence through a Notice of Appeal filed on May 25, 2016.  See Docket No. 64.  On July 16, 2018, the United States Court of Appeals for the Second Circuit dismissed White's appeal on the basis that it was barred by the appellate waiver provision of his plea agreement, which White had not demonstrated was unenforceable.  See Docket No. 99.  The court entered its mandate on October 11, 2018. See id.

White filed the instant Motion to Vacate, Set Aside, or Correct his Sentence on November 20, 2018.  See Docket No. 100.  He raises four claims: (1) he was sentenced in violation of the ex post facto clause; (2) his criminal history category was miscalculated;

---

[3] The Clerk of Court subsequently entered an amended judgment to correct a clerical error.  See Docket Nos. 145-147.

4

(3) he received ineffective assistance of counsel at the plea and sentencing phases; and

(4) he was convicted and sentenced under an unconstitutionally vague and ambiguous

statute.  After full briefing, including White's two motions for an evidentiary hearing, this

Court took the matter under advisement without oral argument.  See Docket Nos. 100,

105, 107, 113, 135.

## III. DISCUSSION

A.    **§ 2255 Proceedings**

Twenty-eight U.S.C. § 2255 allows federal prisoners to challenge the legality of

their sentences.  That section provides, in pertinent part, that:

> A prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the
> sentence was imposed in violation of the Constitution or laws of the United
> States, or that the court was without jurisdiction to impose such sentence,
> or that the sentence was in excess of the maximum authorized by law, or is
> otherwise subject to collateral attack, may move the court which imposed
> the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (a).

Importantly, a § 2255 motion is not a substitute for an appeal.  See Bousley v.

United States, 523 U.S. 614, 621, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) ("Habeas

review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'")

(quoting Reed v. Farley, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed. 2d 277

(1994)).  Relief under § 2255 is therefore narrowly limited, with collateral attack on a final

criminal judgment available "only for a constitutional error, a lack of jurisdiction in the

sentencing court, or an error of law or fact that constitutes a fundamental defect which

inherently results in complete miscarriage of justice."  Graziano v. United States, 83 F.3d

587, 589-90 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12

(2d Cir. 1995) (internal quotation marks omitted)).   This narrow limitation preserves respect for finality, allows for the efficient allocation of judicial resources, and recognizes an aversion to retrying issues long after they occur.   See Bokun, 73 F.3d at 12 (citations omitted).

To shape the narrow relief available under § 2255, two procedural rules apply to make it more difficult for a defendant to upset a final criminal judgment on collateral review.   See Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010).   First, the "mandate rule" bars re-litigation of issues already decided on direct appeal.   See id.; see also Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006); United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997) ("[I]t is well-established that issues decided on direct appeal may not be re-litigated in the context of a petition under § 2255.").   This includes "not only . . . matters expressly decided by the appellate court, but also . . . re-litigation of issues impliedly resolved by the appellate court's mandate."   Yick Man Mui, 614 F.3d at 53 (citing United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001)).   But an exception exists for cases involving intervening changes in the law, in which case the petitioner "must show that there is new law which, when applied to their claims, would result in a different disposition."   Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980) ("Reconsideration [of claims previously raised on direct appeal] is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal.") (citing United States v. Loschiavo, 531 F.2d 659, 664 (2d Cir. 1976)).

Second, the "procedural default" rule bars the collateral review of non-constitutional, non-jurisdictional claims that could have been raised on direct appeal,

unless the petitioner shows cause for failing to raise the claims on direct review and actual prejudice or actual innocence.  See Bousley, 523 U.S. at 622-23 (citations omitted); see also United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011); Brennan v. United States, 867 F.2d 111, 117 (2d Cir. 1989) ("non-constitutional and non-jurisdictional claims are generally procedurally foreclosed to a section 2255 petitioner if not raised on direct appeal").  To satisfy the cause component, the petitioner must show circumstances "external to the petitioner, something that cannot be fairly attributed to him."  Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993).  To satisfy the prejudice component, the petitioner must demonstrate prejudice that creates an "actual and substantial disadvantage, infecting . . . error of constitutional dimensions."  See United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).  To establish actual innocence, the petitioner must show "that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  Bousley, 523 U.S. at 623 (internal quotation marks and citation omitted).  But this rule does not apply to ineffective-assistance-of-counsel claims, which may be brought in a § 2255 motion regardless of whether they could have been raised, or were raised, on direct appeal.  See Massaro v. United States, 538 U.S. 500, 508-09, 123 S. Ct. 1690, 1696, 155 L. Ed. 2d 714 (2003).

In addition to these two rules, waiver principles also apply.  It is well established that a knowing, voluntary, and competent waiver made as part of a plea agreement is presumptively and generally enforceable.  See Sanford v. United States, 841 F.3d 578, 580 (2d Cir. 2016) (per curiam); see also United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011); United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001).  "An enforceable waiver bars claims based on grounds that arose after, as well as before, the

[plea] agreement was signed."   Muniz v. United States, 360 F. Supp. 2d 574, 577 (S.D.N.Y. 2005) (citing Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001) (per curiam)).   Thus, "[i]n no circumstance . . . may a [petitioner] who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless."   United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993). Waivers, however, are strictly construed against the government due to its greater bargaining power and because it usually drafts the plea agreement.   See Yushuvayev v. United States, 532 F. Supp. 2d 455, 468 (E.D.N.Y. 2008).

Discovery in § 2255 proceedings is governed by Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts.  Leave of court is required to engage in discovery, which may be granted for good cause.  See Rule 6 (a).  Such discovery is conducted under the Federal Rules of Criminal or Civil Procedure, or "in accordance with the practices and principles of law."[4]  Id.  The party requesting discovery must provide reasons for the request, which must "include any proposed interrogatories and requests for admission, and must specify any requested documents."  Rule 6 (b).

A petitioner may also be entitled to an evidentiary hearing.  Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  To determine whether a hearing is necessary, the court "must review the answer, any transcripts and records of prior proceedings, and any [additional materials submitted by the parties]."

---

[4] "If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A."  Rule 6 (a).

Rule 8 (a).  If a hearing is necessary, the court must appoint an attorney to any moving party who qualifies for the appointment of counsel under 18 U.S.C. § 3006A.  See Rule 8 (c).  A hearing is generally warranted only where the petitioner establishes a plausible claim.  See Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009).

The Second Circuit has further described the standard for holding a § 2255 evidentiary hearing as follows:

> In ruling on a motion under § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255; see, e.g., Pham v. United States, 317 F.3d 178, 185 (2d Cir. 2003) (§ 2255 does not permit summary dismissals of motions that present facially valid claims).  However, the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are "vague, conclusory, or palpably incredible." Machibroda v. United States, 368 U.S. 487, 495, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962); see, e.g., Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001).  To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief.  See, e.g., Machibroda, 368 U.S at 494, 82 S. Ct. 510; United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987).

Gonzalez v. United States, 722 F.3d 118, 130-31 (2d Cir. 2013).

Ultimately, the petitioner bears the burden of proving entitlement to relief under § 2255 by a preponderance of the evidence.  See Galviz Zapata v. United States, 431 F.3d 395, 399 (2d Cir. 2005) (citing Williams v. United States, 481 F.2d 339, 346 (2d Cir. 1973)); see also Triana v. United States, 205 F.3d 36, 30 (2d Cir. 2000).

## B. White knowingly, voluntarily, and competently waived his right to appeal and collaterally attack his sentence.

A defendant's knowing, voluntary, and competent waiver of his right to appeal and

collaterally attack his sentence is presumptively enforceable.  See Riggi, 649 F. 3d at 147.  Because a valid waiver itself may bar a petitioner's claims, enforceability must be determined as a threshold matter.

The petitioner bears the burden of demonstrating that he did not knowingly and voluntarily waive his appeal and collateral attack rights.  See United States v. Hargrove, Nos. 03-CV-6634T, 02-CR-6064T, 01-CR-6112T, 2004 WL 2123497, at *2 (W.D.N.Y. Aug. 10, 2004).  To determine whether a challenged waiver is enforceable, courts examine the underlying record and may rely on a defendant's sworn statements during the plea allocution, see Salerno v. Berbary, 389 F. Supp. 2d 480, 484 (W.D.N.Y. 2005), which statements "carr[y] such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony," United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001).

White challenges the validity of his waiver on three grounds.  First, he claims that he did not knowingly enter the plea agreement because counsel was ineffective in determining his Guidelines sentencing exposure.  Second, he claims that the waiver provision does not apply because this Court sentenced him outside of its parameters. Third, he maintains that this Court expanded his appeal rights during the plea allocution to permit a collateral attack.  None of these arguments has merit.

### 1. White did not unknowingly enter his waivers and plea agreement due to ineffective assistance of counsel.

White first claims that his waivers and plea agreement are the product of ineffective assistance of counsel.  The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his

defence."  U.S. CONST. amend VI.  It is well established that "the right to counsel is the right to the effective assistance of counsel."  Eze v. Senkowski, 321 F.3d 110, 124 (2d Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).

To succeed on his ineffective-assistance-of-counsel claim, White must establish both prongs of the two-part test from Strickland v. Washington: (1) that his counsel's performance "fell below an objective standard of reasonableness;" and (2) that "the deficient performance prejudiced" him.  466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To satisfy the first prong of the Strickland test, White must establish that his counsel's conduct fell below "an objective standard of reasonableness" under "prevailing professional norms" such that it was "outside the wide range of professionally competent assistance."  Id. at 688, 690.   Under this prong, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and be watchful 'to eliminate the distorting effects of hindsight.'"  Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (quoting Strickland, 466 U.S. at 689).   This is because "[t]here are countless ways to provide effective assistance in any given case" and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way."  Strickland, 466 U.S. at 689 (internal citation omitted).   The question is ultimately "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."  Harrington v. Richter, 562 U.S. 86, 105, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

To satisfy the second prong of the Strickland test, White must establish that his attorney's "deficient performance prejudiced the defense" such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Strickland, 466 U.S. at 687, 694. The Second Circuit normally "requires some objective evidence other than defendant's assertions to establish prejudice," Pham v. United States, 317 F.3d 182, 182 (2d Cir. 2003), because "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding," Strickland, 466 U.S. at 693. Since White's conviction was secured by way of plea, he must demonstrate a reasonable probability that but for counsel's errors, he would not have pleaded guilty. See Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); Tate v. Wood, 963 F.2d 20, 26 (2d Cir. 1992).

Because both parts of the Strickland test must be satisfied for a petitioner to establish ineffective assistance of counsel, failure to satisfy one part of the test frees a district court from assessing whether the petitioner satisfied the other part of the test. Strickland, 466 U.S. at 697 (noting that a court need not "address both components of the [two-part Strickland] inquiry if the defendant makes an insufficient showing on one"); see also Stouse v. Leonardo, 928 F.2d 548, 556 (2d Cir. 1991).

White maintains that his waiver and plea are unknowing because his lawyer failed to advise him of the correct base offense level for his crime of conviction. The parties agreed in the plea agreement that White's base offense level under U.S.S.G. § 2G1.3 (a)(1) was 34, presumably using the 2014 Guidelines Manual. See Plea Agreement, ¶ 8. White maintains that counsel should have used the 2006 Guidelines Manual in

negotiating his plea because his offense conduct concluded in 2006 and the 2006 Guidelines Manual was more favorable to him, providing for a base offense level of 24, not 34.  See U.S.S.G. § 2G1.3 (a) (2006).  But even if White is correct, which the government does not concede and this Court does not decide, he fails to establish any prejudice resulting from the purported error.  See Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

In the context of whether he received ineffective assistance of counsel at the time of his plea, this Court reads White's motion liberally as arguing that had the 2006 Guidelines Manual been used, the plea agreement would have contemplated a total offense level of 27 (not 37), if the disputed increases applied, and 23 (not 33), if they did not.  With the parties' understanding that White fell within criminal history category I, White maintains that he would have faced Guidelines ranges of 70-87 months or 46-57 months, depending on whether the disputed increases applied, not ranges of 210-261 and 180 months, as reflected in the plea agreement.  See Plea Agreement, ¶¶ 15 (a) and (b).

White's understanding is incorrect.  Under either of his 2006 Guidelines Manual scenarios, White's Guidelines range would have been 180 months (not 70-87 months or 46-57 months).  This is because White faced a statutory minimum penalty of 15 years' imprisonment under 18 U.S.C. § 1591 (b)(1).  In a situation where a defendant's statutory minimum sentence is greater than the maximum guideline range, the statutorily required minimum sentence becomes the guideline range.  See U.S.S.G. § 5G1.1 (b). Consequently, White's Guideline range would have been 180 months' imprisonment using the 2006 Guidelines' Manual.

White also fails to demonstrate a reasonable probability that but for counsel's purported error, he would not have entered his guilty plea. He maintains that "had defendant known that there was a 10 point, 100 month difference in the guidelines that applied there is no way he would have taken the deal." See Motion to Vacate, Docket No. 100, p. 27. He also suggests that his lawyer could have negotiated a better plea offer if he had started from the lower base offense level (24). Neither contention is persuasive.

First, as explained above, U.S.S.G. § 5G1.1 (b) renders the 10-point difference in base offense levels largely moot, since it sets the floor of any Guidelines range at 180 months.

Second, there is no "100 month difference." At best, there is a 30-month difference between the plea agreement White contends he should have received, which would have reflected a Guidelines range of 180 months, if the disputed increases were resolved in the government's favor, and the plea agreement that he actually entered, which identified that same range as 210-261 months. But White, who was willing to enter the plea agreement providing for a possible 210-261 Guidelines range, makes no contention that he would have gone to trial if he understood his sentencing exposure to be *less* at 180 months. Indeed, he entered the plea specifically advocating for a 180-month Guidelines range. See Plea Agreement, ¶ 15 (b).

Third, White's contention that counsel could have negotiated a better plea offer if he had started from a base offense level 24 is both speculative and highly unlikely given that the Guidelines floor would remain 180-months, as discussed above. Cf. Randolph v. United States, No. 6:16-CR-6116-FPG, 2018 WL 6111143, at *3 (W.D.N.Y. Nov. 21, 2018) ("Trial counsel cannot be deemed ineffective for failing to advise [the defendant] to

accept an entirely hypothetical plea offer.").

Finally, the substantial benefits White received from pleading guilty belie the notion that he would have proceeded to trial but for counsel's purported error.  White faced a 9-count indictment, with a conviction on Count 2 carrying a mandatory minimum sentence of 15 years and up to life imprisonment.  White would have lost the 3-level reduction for acceptance of responsibility and substantial assistance, and more significantly, lost the 6-level reduction for cooperation and the opportunity for a sentence below the mandatory minimum under 18 U.S.C. § 3553 (e).  It is therefore not reasonably probable that White would have proceeded to trial in the absence of counsel's alleged error.

Accordingly, for all of these reasons, this Court finds that even assuming an unprofessional error that fell below an objective standard of reasonableness, White fails to demonstrate a reasonable probability that but for counsel's alleged error, he would not have pleaded guilty.  See Hill, 474 U.S. at 58-59.

**2. This Court did not sentence White outside the parameters of the waiver provision.**

White's second argument is that the waiver provision in the plea agreement does not apply because this Court sentenced him using criminal history category II, rather than criminal history category I, which the parties agreed to in the plea agreement.  See Motion to Vacate, p. 43.  He maintains that because this Court did not sentence him "according to the negotiated terms of the Agreement," presumably meaning according to the parties' contemplated Guidelines calculations, the waiver provision is unenforceable and does not apply.  Id.  Such is not the case.

First, the waiver provision quite clearly provides that White waived his appeal and collateral attack rights "notwithstanding the manner in which the Court determines the

sentence." <u>See</u> Plea Agreement, ¶ 22.  This means that the waiver applies so long as White received a sentence within or less than 210-261 months, which he did at 156 months.  <u>See id.</u> ¶¶ 15 (a), 22.  That this Court's sentencing calculations were different from those set forth in the plea agreement does not invalidate the waiver provision.

Second, White confirmed during his plea allocution that he understood that this Court would make the final determination concerning his Guidelines calculations and that he was forfeiting his right to appeal "a sentence within the *guideline range* or less," independent of the final Guidelines calculations.  <u>See</u> Plea Transcript, Docket No. 97, pp. 14, 17 (emphasis added).

Consequently, there is no merit to White's position that the waiver provision does not apply.

### 3.  This Court did not expand White's appeal rights during the plea allocution.

In his final bid to avoid the waiver, White argues that this Court expanded his appeal rights during the plea allocution when it advised him that he could appeal its final Guidelines calculations.  <u>See</u> Motion to Vacate, pp. 44-45.  White, however, takes this Court's statement out of context.

This Court carefully reviewed White's appeal rights during the plea allocution.  It first advised him that if he elected to go to trial and was convicted, he would have the right to appeal.  <u>See</u> Plea Transcript, p. 10.  It then advised him that if he pleaded guilty, he would retain his appeal right "*as defined in the plea agreement*."  <u>Id.</u> (emphasis added). It then advised White that he would have to perfect any appeal by timely filing a notice of appeal.  <u>Id.</u> at pp. 10-11.  White responded, "yes sir," when asked whether he understood his appeal rights, including that they were defined in the plea agreement.  <u>Id.</u> at 11.

Later in the allocution, this Court explained to White that once he pleaded guilty, he would not be able to withdraw his plea if this Court determined his Guidelines calculation differently than contemplated in the plea agreement.  See id. p. 14.  It stated: "Now, when we're talking numbers, if the numbers are different and you don't like my numbers, you can appeal my determination, but you cannot withdraw your plea of guilty because you disagree with my calculations, do you understand that?"  Id. p. 15.  White responded, "Yes."  Id.

This Court then reviewed the waiver provisions of White's plea agreement and confirmed that White understood that he was waiving his right to appeal or collaterally attack any sentence of 261 months or lower.  See id. p. 17.

White seizes on this Court's statement that he could "appeal my determination" of the final Guidelines calculations as modifying his plea agreement to expand his appeal rights.  But properly considered in the totality of the allocution, this statement does no such thing.  First, White confirmed that he carefully reviewed and discussed the plea agreement before the start of the allocution.  See id. p. 2.  He also signed the plea agreement before the allocution, therein attesting that he read and understood the agreement and had the full opportunity to discuss it with his lawyer.  See Plea Agreement, p. 18.  Thus, White understood the cabined nature of his appeal right, as set forth in ¶ 22 of the plea agreement, before engaging in the allocution.

Second, this Court's statement came not in the context of explaining White's appeal right, but rather, in emphasizing that White would not be able to withdraw his guilty plea based on the court's final Guidelines calculations.

Finally, this Court's statement must be considered in the context of the entire

allocution, during which this Court correctly explained that White's appeal rights were defined in his plea agreement, meaning in ¶ 22, which White indicated he understood. This Court's statement that White could "appeal my determination" is thus properly read as indicating that White could appeal consistent with the terms of his plea agreement, not as an expansion of his appeal rights.

Accordingly, for all of these reasons, this Court finds that it did not expand White's appeal rights during the plea allocution.

**C.     White's remaining claims are barred by the waiver.**

Construing White's submissions and arguments liberally as required, see Marmolejo v. United States, 196 F.3d 377, 378 (2d Cir. 1999) (per curiam), this Court finds that he brings the following additional claims.  First, he claims that he was sentenced in violation of the ex post facto clause.  See Motion to Vacate, pp. 4, 25-27.  Second, he maintains that his criminal history category was miscalculated.  See id. pp. 5-6, 27-30. Third, he contends that his retained lawyer was ineffective during the sentencing phase by failing (1) to investigate his base offense level, (2) to investigate his criminal history category, (3) to file sentencing submissions,[5] and (4) to effectively communicate with White and White's private investigator.  See id. pp. 7, 11, 24-39.  Finally, White argues that the statute under which he was convicted and sentenced, 18 U.S.C. § 1591, is unconstitutionally vague and ambiguous.  See id. pp. 8-9, 16-24.

Having found that White knowingly, voluntarily, and competently waived his appeal and collateral-attack rights, this Court must enforce the waiver.  Cf. United States v. Granik, 386 F.3d 404, 412 (2d Cir. 2004) ("Knowing and voluntary appellate waivers

---

[5] The record reflects that White's lawyer filed some sentencing submissions—objections to the Presentence Investigation Report and sentencing letters and certificates of achievement.  See Docket Nos. 69, 83.

included in plea agreements must be enforced because, if they are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants."). While there are narrow exceptions to the general enforceability of waivers, none of them apply here. A waiver provision is presumptively enforceable other than

> (1) when the waiver was not made knowingly, voluntarily, and competently, (2) when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, (3) when the government breached the plea agreement, or (4) when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus.

Sanford, 841 F.3d at 580 (quoting United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000)). Since none of these exceptions apply, this Court must enforce the waiver provision of the plea agreement to bar White's remaining claims.

A valid "waiver bars claims based on grounds that arose after, as well as before, the [plea] agreement was signed." Muniz, 360 F. Supp. 2d at 577. A valid guilty plea "conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue." United States v. Gregg, 463 F.3d 160, 164 (2d Cir. 2006); see Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235 (1973) (noting that if a defendant validly admits guilt, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea"). And the Second Circuit has "long enforced waivers of direct appeal rights in plea agreements, even though the grounds for appeal arose after the plea agreement was entered into." Garcia-Santos, 273 F.3d at 509 (citing United States v. Yemitan, 70 F.3d 746, 747-48 (2d

Cir. 1995)); see also United States v. Harrison, 699 F.3d 158, 159 (2d Cir. 2012) (per curiam) (finding that the petitioner's "inability to foresee that subsequently decided cases would create new appeal issues does not supply a basis for failing to enforce an appeal waiver") (quoting Riggi, 649 F.3d at 150 n. 7 )); Medina v. United States, 16 Civ. 5043 (AT)(JCF), 94 Cr. 0872 (SAS)(JCF), 2017 WL 476670, at *2 (S.D.N.Y. Feb. 3, 2017) (citing Garcia-Santos in rejecting a petitioner's argument that his waiver was not knowing and voluntary "because he could not have known 'that he was also waiving a right that didn't exist at the time of the guilty plea'").  The same is true for enforcement of waivers of collateral attack under § 2255.  See Garcia-Santos, 273 F.3d at 509 ("The reasons for enforcing waivers of direct appeal [when the grounds for appeal arose after the plea agreement was entered into] lead us to the same conclusion as to waivers of collateral attack under § 2255.").

White's remaining ineffective-assistance-of-counsel claims are not the type that fall outside of the waiver.  "[A] waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which a waiver has been procured," such as a plea agreement.  Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002).  A waiver may thus be unenforceable if the petitioner has a meritorious claim that it was procured as the result of ineffective assistance of counsel.  See United States v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004); see El Saleh v. United States, 13-CV-1567 (DLI), 2016 WL 4734601, at *3 (E.D.N.Y. Sept. 9, 2016) ("[A] defendant cannot be bound by an appeal waiver if the decision to enter a plea agreement was the product of counsel's ineffective assistance") (citing Hernandez, 242 F.3d at 114)).  Thus, "[a]n ineffective assistance of counsel claim survives the guilty plea or the appeal waiver

20

*only* where the claim concerns the advice the defendant received from counsel" that informed his or her decision to enter the guilty plea.  Parisi v. United States, 529 F.3d 134, 138-39 (2d Cir. 2008) (emphasis added).

This is because, if a petitioner challenges counsel's effectiveness in connection with the plea agreement itself, he is in essence challenging the constitutionality of the process by which he waived his right to collaterally attack the sentence, and his claim therefore survives the waiver.  Id. ("although challenging the attorney's role in shaping the defendant's bargaining position cannot avoid the waiver, challenging the attorney's advice about that bargaining position, by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct, does."); see also El Saleh, 2016 WL 4734601, at *3 ("[W]here an attorney's ineffective assistance caused a defendant to agree to a waiver, a court must look past the waiver and examine the underlying merits of the ineffective assistance claim.").  In short, ineffective-assistance-of-counsel claims that affect the plea process survive the waiver, and those that do not, do not.  See id. at *5.

This Court has resolved the ineffectiveness claims that affect the plea process above.  What remains are White's ineffectiveness claims that do not relate to the plea process.  Those claims are that counsel was ineffective during the sentencing stage by failing to investigate the proper base offense level, failing to investigate the criminal history category, failing to file sentencing submissions, and failing to communicate.  But because these claims do not relate to the plea process, they do not survive the valid, enforceable waiver.  See United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998) ("[D]efendant claims that his waiver should not bar consideration of his appeal because

counsel was ineffective not at the time of the plea, but at sentencing.  We emphatically reject this contention."); United States v. Jimenez, 106 F. App'x 92, 93 (2d Cir. 2004) (citing Monzon, 359 F.3d at 118 ("[A] claim of ineffective assistance is waived when . . . it attacks the sentence itself and not the underlying plea agreement that supported the sentence.")); Mitchell v. United States, Case Nos. 14-CV-6350-FPG, 11-CR-6019-FPG, 2020 WL 587883, at *7 (W.D.N.Y. Feb. 6, 2020) (finding pre-plea ineffective-assistance-of-counsel claims barred by valid waiver where they pertained solely to pre-plea errors that did not involve the plea process); United States v. Cano, 494 F. Supp. 2d 243, 248 (S.D.N.Y. 2007) (finding that only "when the claim relates to the negotiation and entry of a plea or sentencing agreement" may "[c]laims of ineffective assistance of counsel . . . survive § 2255 waivers").

Finally, to the extent White's motion could be read to contain a claim of actual innocence, which is nowhere present in the motion, it fails.  To establish actual innocence, White must produce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt."  Schlup v. Delo, 513 U.S. 298, 324-27, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).  For the sake of completeness, this Court finds that White produces no such evidence and makes no such showing.  See United States v. Hirsch, 239 F.3d 221, 225 (2d Cir. 2001) (finding that a claim of actual innocence "must be supported by evidence").

Consequently, for the reasons stated above, this Court finds that each of White's claims fail by operation of the waiver provisions of his plea agreement.

D.    **Evidentiary Hearing**

As indicated above, § 2255 provides that a court must hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  Rule 4 (b) also provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ."

Here, this Court finds that no evidentiary hearing is warranted or required because White's motion and the record conclusively demonstrate that White is not entitled to relief under § 2255.  See Orbach v. United States, 11 Cr. 111 (NRB), 2017 WL 5632815, at *7 (S.D.N.Y. Nov. 7, 2017) (denying request for a § 2255 hearing where "[t]he existing record is conclusive that petitioner is not entitled to relief on any theory presented to [the court]").  White's motions for an evidentiary hearing will therefore be denied.  See Docket Nos. 113, 135.

E.    **Certificate of Appealability**

For a certificate of appealability to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253 (c)(2).  To make the required "substantial showing," White must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations and internal quotation marks omitted).  White has made no such substantial showing of the denial of a constitutional right in this case.  A certificate of appealability will therefore not be issued.

**IV. CONCLUSION**

For the reasons stated above, White's Motion to Vacate, Set Aside or Correct his Sentence is denied.  If White wishes to appeal, he must file a Notice of Appeal with the Clerk's Office, United States District Court, Western District of New York, within 60 days of the date of judgment in this action.  Requests to proceed on appeal as a poor person, if any, must be filed with the United States Court of Appeals for the Second Circuit, in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**V. ORDERS**

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence and Conviction under 28 U.S.C. § 2255 (Docket No. 100) is DENIED.

FURTHER, that Petitioner's Motions for an Evidentiary Hearing (Docket Nos. 113, 135) are DENIED.

FURTHER, that so much of Petitioner's omnibus motion seeking scheduling orders and other relief (Docket No. 119) that pertains to his motion to vacate or motions for an evidentiary hearing is DENIED AS MOOT.

FURTHER, that this Court hereby certifies, pursuant to 28 U.S.C. § 1915 (a)(3) and Rule 24 (a)(3) of the Federal Rules of Appellate Procedure, that any appeal from this Decision and Order would not be taken in good faith and therefore leave to appeal as a poor person is DENIED.  See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

FURTHER, that a Certificate of Appealability under 28 U.S.C. § 2253 is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE 18-CV-1315S.

FURTHER, that the Clerk of Court is directed to mail a copy of this decision to Petitioner at his correctional institution of record.

SO ORDERED.

Dated:       January 19, 2022
             Buffalo, New York

                                        s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                     United States District Judge