UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KENNETH WHITE,

                Petitioner,

v.

UNITED STATES OF AMERICA,

                Respondent.

**DECISION AND ORDER**
13-CR-255S (1)

## I. INTRODUCTION

Presently before this Court is a Motion for Compassionate Release by Defendant Kenneth White, which the government opposes. See 18 U.S.C. § 3582 (c)(1)(A). For the reasons below, White's motion is denied.

## II. BACKGROUND

On November 20, 2013, a federal grand jury returned a 9-count indictment that charged White with sex-trafficking crimes. See Docket No. 1. Nearly two years later, on September 2, 2015, White pleaded guilty to so much of Count 2 that charged him with sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591 (a)(1) and (b)(1). See Docket Nos. 52, 54. On May 18, 2016, this Court sentenced White to 156 months' (13 years) imprisonment, 5 years' supervised release, a $100 special assessment, and no fine, fees, or costs. See Docket No. 85. White appealed, and on July 16, 2018, the Second Circuit dismissed his appeal as barred by the waiver of appellate rights provision of his plea agreement, see Docket No. 99, and this Court later denied White's federal habeas petition, see White v. United States, 18-CV-1315S, 13-CR-255S (1), 2022 WL 170607 (W.D.N.Y Jan. 19, 2022), and his subsequent motion for reconsideration, see White v. United States, 18-CV-1315S, 13-CR-255S (1), 2022 WL

1

2948974 (W.D.N.Y July 26, 2022).  White is presently serving his sentence at FCI Petersburg Low.[1]

On July 15, 2022, White filed a pro se motion seeking compassionate release (sentence reduction) under 18 U.S.C. § 3582 (c)(1)(A)(i).  See Docket Nos. 166, 178. White argues that release is warranted because (1) his sentence was marred by legal error, (2) his children and elderly family members require his care, (3) he is particularly susceptible to COVID-19, and (4) he is rehabilitated and has participated in numerous educational and vocational programs.  The government opposes the motion.  See Docket No. 177.

## III. DISCUSSION

**A.     Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)(i)**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). One such statute is 18 U.S.C. § 3582 (c)(1)(A)(i) which, as amended by the First Step Act of 2018,[2] provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term

---

[1] See https://www.bop.gov/inmateloc/ (last visited September 8, 2022).

[2] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release.  See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018).  The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions.  See, e.g., United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *1 n.1 (S.D.N.Y. Feb. 4, 2020) (explaining the First Step Act amendment); United States v. Gotti, 433 F. Supp. 3d 613, 614-15 (S.D.N.Y. 2020) (same).

2

> of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute. See United States v. Ebbers, 432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020). A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is warranted after consideration of the applicable 18 U.S.C. § 3553 (a) factors and consistent with any applicable Sentencing Guidelines provisions. See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 451 F. Supp. 3d 288, 291 (S.D.N.Y. 2020); United States v. Gileno, 448 F. Supp. 3d 183, 185 (D. Conn. 2020).

The statutory exhaustion requirement is not jurisdictional, but rather, is a claim-processing rule that may be waived or forfeited by the government. See United States v. Saladino, 7 F. 4th 120, 121-124 (2d Cir. 2021) (per curiam). If invoked, however, the exhaustion requirement must be enforced because it is a mandatory claim-processing rule. See id. at 125 (Menashi, J., concurring); see also United States v. Schultz, 454 F. Supp. 3d 217, 223-24 (W.D.N.Y. 2020). The exhaustion requirement is met when the earlier of two circumstances occurs: (1) the defendant fully exhausts all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, [3] or (2) 30 days lapse from the date the warden

---

[3] The Scparta court explained the administrative process before the Bureau of Prisons as follows:

3

of the defendant's facility receives the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

Congress initially delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A)(i).  See 28 U.S.C. § 994 (t).  The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582 (c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines.  The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction: "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons".  See U.S.S.G. § 1B1.13, Application Notes.

But notably, the Second Circuit has held that U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought directly by defendants, such as this one, and no longer constrains a district court's consideration of what qualifies as extraordinary and compelling reasons for purposes of such motions.  See United States v. Brooker, 976

---

> First, an inmate must request the warden of her facility to file a compassionate-release motion on her behalf.  28 C.F.R. § 571.61 (a).  Second, if the warden denies the prisoner's request, she has 20 days to appeal to the BOP's Regional Director.  Id. § 571.63 (a) (providing that denials of compassionate-release requests are governed by the BOP's general Administrative Remedy Program, contained in 28 C.F.R. §§ 542.10-542.19); id. § 542.15 (a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.").  Third, if the Regional Director denies the prisoner's request, she then has 30 days to appeal to the BOP General Counsel.  Id. § 542.15 (a).  A decision from the General Counsel is the final step in the BOP's Administrative Remedy Program, id., and therefore "constitutes a final administrative decision," id. § 571.63 (b).

United States v. Scparta, 567 F. Supp. 3d 416, 424 (S.D.N.Y. 2020).

4

F.3d 228, 234-37 (2d Cir. 2020) (holding that U.S.S.G. § 1B1.13 applies only to motions brought by the Bureau of Prisons).  The circuit court further held that "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."  Id.; see also United States v. Jones, 17 CR 214 (CM), 2021 WL 4120622, at *1-2 (S.D.N.Y. Sept. 9, 2021).

As to the required consideration of the 18 U.S.C. § 3553 (a) factors, they include, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities.  See 18 U.S.C. § 3553 (a).  Included in this calculus is whether the defendant may pose a danger to the safety of any person or to the community if released (the need to protect the public from future crimes).

Finally, district courts have broad discretion in deciding whether to grant or deny motions for sentence reduction.  See Gileno, 448 F. Supp. 3d at 186.

B.   **White's Motion for Compassionate Release**

   **1. Exhaustion of Administrative Rights**

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains an exhaustion requirement.  To satisfy this requirement, a defendant must demonstrate that either (1) he or she fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf,

or (2) 30 days have lapsed from the date the warden of the defendant's facility received the defendant's request to file such a motion on his or her behalf. See 18 U.S.C. § 3582 (c)(1)(A).

Here, the record reflects that White has exhausted his administrative rights, and the government does not contend otherwise. See Motion for Compassionate Release, Docket No. 166, Exhibit A (containing White's administrative exhaustion records); Government Response, Docket No. 177, p. 3 n. 2 (conceding exhaustion). This Court therefore finds that exhaustion is complete.

**2. Extraordinary and Compelling Reasons for Sentence Reduction**

White contends that errors in his sentencing, the need to care for his family members, the dangers of COVID-19, and his rehabilitation, individually and collectively, constitute extraordinary and compelling reasons warranting a sentence reduction and immediate release. None of these arguments are compelling.

First, White resurrects his previously-rejected claims that he was sentenced in violation of the *ex post facto* clause and that his criminal history category was miscalculated. But as this Court previously held in resolving White's § 2255 petition, White knowingly and voluntarily waived these claims as part of his plea. See White, 2022 WL 170607, at *7-11. To now consider these validly waived claims as a basis for compassionate release would, in this Court's view, constitute an impermissible end-run around the enforceable waiver provisions of the plea agreement and the limitations imposed by § 2255. See United States v. Laboy, 15-CR-91 EAW, 2021 WL 5176663, at *2 (W.D.N.Y. Nov. 8, 2021) (finding it inconsistent with the compassionate-release statute "to allow a defendant to assert claims of legal error that he expressly waived the right to

press through the ordinary means of direct appeal and collateral attack"); United States v. Antney, 17-CR-229 (CBA), 2021 WL 4502478, at *5 (E.D.N.Y. Sept. 30, 2021) ("A motion for compassionate release should not be used to attack the legitimacy of a judge's imposed sentence—such an attack is properly brought on direct appeal or in a habeas petition, not in a motion for compassionate release brought under 18 U.S.C. § 3582 (c)(1)(A)."). While some courts have considered conceded and substantial sentencing errors under § 3582 (c)(1)(A), those circumstances are not present here. See, e.g., United States v. Gilley, 04-CR-6152-CJS-2, 2021 WL 5296909, at *9 (W.D.N.Y. Nov. 15, 2021) (relying on Lopez (below) and considering 60-month sentencing-calculation error an extraordinary and compelling reason for sentence reduction); United States v. Lopez, 523 F. Supp. 3d 432, 438 (S.D.N.Y. 2021) (considering undetected, substantial, and "truly extraordinary" sentencing error that was not considered on direct appeal or under § 2255 but noting that "most errors in an original sentencing are not likely to qualify as an extraordinary and compelling reason for a sentence reduction").

White next maintains that the need for him to care for his children and elderly family members is an extraordinary and compelling reason to reduce his sentence. While a defendant's status as the only available caregiver to a close family member may, in some circumstances, constitute an extraordinary and compelling reason for a sentence reduction, see, e.g., United States v. Yoda, No. 15 CR 95, 2020 WL 5502325, at *2 (S.D.N.Y. Sept. 11, 2020) ("the need to care for one's aging and sick parent may, in certain circumstances, warrant a finding that an extraordinary and compelling reasons exists"); United States v. Wooten, No. 3:13-cr-18 (SRU), 2020 WL 6119321, at *4 (D. Conn. Oct. 16, 2020) (recognizing grounds for reduction and collecting cases), such is

not the case here. White simply maintains that his fiancé, five children, and two grandchildren would benefit from his presence and care, and that he is needed to care for his "sickly" mother, stepparents, and aunts, who suffer from unspecified "medical issues." See Motion for Compassionate Release, p. 7. He further states that after losing his father, he "would like to spend the remaining days of his elderly living parents['] lives with them." Id.

As laudable as White's willingness to care for his family members may be, he has not established "[c]ircumstances approaching the truly dire," which are necessary to secure a sentence reduction. United States v. Mitchell, 16-CR-34-FPG, 2022 WL 1025032, at *5 (W.D.N.Y. Apr. 6, 2022). Nothing in the record suggests that any of White's relatives require extraordinary care that only he can provide. At best, White establishes that he is simply the preferred caregiver of his family members, but their preference for White's care does not amount to an extraordinary and compelling reason for a sentence reduction. See United States v. Martinez, 10-CR-233S (1), 2022 WL 1089671, at *4 (W.D.N.Y. Apr. 12, 2022) (finding that defendant failed to establish he was only suitable caregiver for mother); United States v. Rollins, 19-CR-34S, 11-CR-251S, 2021 WL 5445772, at *4 (W.D.N.Y. Nov. 22, 2021) (denying compassionate release to defendant who was the preferred, but not only, available caregiver); United States v. Wilson, 10-CR-363S (1), 2021 WL 2327312, at *3-5 (W.D.N.Y. June 8, 2021) (denying compassionate release, in part, due to defendant's failure to demonstrate that he was mother's only available caregiver); United States v. Pabon, 17 Cr. 312 (JPC), 2021 WL 603269, at *4 (S.D.N.Y. Feb. 16, 2021) (denying compassionate release for, among other reasons, defendant's failure to show that he was wife's only available caretaker); United

8

States v. Lindsey, No. 13-CR-271-LTS, 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) (denying sentence reduction on basis that defendant failed to show that no other family member or other caretaker could provide the necessary care).

White next contends that the COVID-19 pandemic constitutes an extraordinary and compelling reason for a sentence reduction. He maintains that his obesity makes him particularly susceptible to serious illness from COVID-19, and that the Bureau of Prisons is generally unable to control the spread of the virus.

While the risks associated with the pandemic have surely warranted release in many cases, they do not here. To begin, White admits that he has been fully vaccinated and boosted against COVID-19. See Compassionate Release Motion, p. 7. This decreases his chances of serious illness from the virus, notwithstanding his obesity. See United States v. Rudkin, Crim. No. 3:08-cr-177 (AWT), 2021 WL 2109182, at *1 (D. Conn. May 25, 2021) (finding "the fact that the defendant has been vaccinated means that his medical conditions no longer support a conclusion that the more severe illness or death from COVID-19 presents an extraordinary and compelling reason warranting reduction of his sentence"); United States v. Hines, 17-CR-364-2 (CS), 2021 WL 2077982, at *2 (S.D.N.Y. May 24, 2021) (finding that inoculation weighs against a finding of extraordinary and compelling reasons for a sentence reduction based on medical conditions).

Moreover, White's generalized fear of a continuing danger posed by COVID-19 also does not constitute an extraordinary and compelling reason for compassionate release. See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone

cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); United States v. Nwankwo, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) ("the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease"); United States v. Eberhart, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020).

Finally, White fails to demonstrate that FCI Petersburg Low is unable or unwilling to respond to the threat of COVID-19.  As of this writing, there are zero positive inmate cases and only four positive staff cases at Petersburg Low, which is at Level 3 Operations, a response specifically designed to quell the spread of the virus.[4]  The Bureau of Prisons is thus responding to the threat of COVID-19, which again, poses reduced risk to White, who is fully vaccinated.  In any event, as this Court and others have found, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme.  See United States v. Scott, 09-CR-341S, 2020 WL 5587122, at *5 (W.D.N.Y. Sept. 18, 2020) (denying compassionate release to defendant in high-risk category who made no showing of Bureau of Prisons failures); United States v. Stevens, 459 F. Supp. 3d 478, 486 (W.D.N.Y. 2020); see also Raia, 954 F.3d at 597 ("the mere existence of COVID-19 in society and the possibility that it may

---

[4] See https://www.bop.gov/coronavirus/ (last visited September 8, 2022).

10

spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); United States v. Gold, 459 F. Supp. 3d 1117, 1120 (N.D. Ill. 2020) (finding that COVID-19 does not "warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease"); United States v. Gagne, 451 F. Supp. 3d 230, 235 (D. Conn. 2020) (denying compassionate release where the defendant failed to show "that the [Bureau of Prisons] cannot adequately manage the [COVID-19] pandemic or treat her to a reasonable degree"); Gileno, 448 F. Supp. 3d at 188 ("Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno.").

White's final argument is that compassionate release is warranted due to his extraordinary rehabilitation, demonstrated by his successful completion of multiple programs and courses, institutional employment, and lack of disciplinary infractions. Rehabilitation efforts alone, however, cannot be considered an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994 (t); Brooker, 976 F.3d at 234 ("The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'") (emphasis in original) (quoting 28 U.S.C. § 994 (t)).  While White's efforts at rehabilitating himself are commendable and should continue, they do not alone or in combination with his other arguments constitute an extraordinary and compelling reason for compassionate release.[5]  See United States v. Steele, No. 3:19-cr-65-VLB-2,

---

[5] As a corollary, White argues that a sentence reduction is warranted because his participation in certain evidence-based recidivism-reduction programs and activities does not yield time credits due to his statutory

11

2021 WL 2138829, at *7 (D. Conn. May 26, 2021) (finding that "because the other claimed circumstances are unpersuasive and unsupported, [defendant's] rehabilitation cannot be considered an extraordinary and compelling reason"); United States v. Richiez-Castillo, 00-CR-54-RJA, 2021 WL 1746426, at *6 (W.D.N.Y. May 4, 2021) (finding that rehabilitation could not be considered an extraordinary and compelling reason for sentence reduction in the absence of other grounds).

Accordingly, for these reasons, this Court finds that White has failed to demonstrate circumstances, viewed singly or in combination, that constitute an extraordinary and compelling reason for compassionate release.

### 3. Consideration of the § 3553 (a) Factors

Even if White had demonstrated extraordinary and compelling reasons for a sentence reduction (which he has not), this Court would find that those reasons are greatly outweighed by consideration of the § 3553 (a) factors, and that White's original sentence would be severely undermined by a sentence reduction. See 18 U.S.C. § 3582 (c)(1)(A) (requiring consideration of the applicable § 3553 (a) factors); see also Ebbers, 432 F. Supp. 3d at 426.

The nature and circumstances of White's offense conduct are truly egregious. White himself concedes that his actions "were nothing less than brutal." See Motion for Compassionate Release, p. 9. White operated an interstate commercial sex business. He advertised women for sex services on social media and other websites in various cities in the United States. See Presentence Investigation Report, Docket No. 87, ¶ 13.

---

ineligibility. See 18 U.S.C. § 3632 (d). White's ineligibility, however, is a simple function of his crime of conviction, see 18 U.S.C. § 3632 (d)(4)(D)(xxvii), and therefore does not constitute an extraordinary and compelling reason for a sentence reduction.

White used force and other forms of coercion against the women (including one minor female) who worked for him, including physical assault, rape, charging "debts" for disobeying his rules, making them payoff their "debts" by prostituting themselves, and taking all of the money the women collected.  Id.  He used fear to gain compliance, and plied the women with drugs and alcohol to keep them awake to have sex with as many clients as possible.  Id. ¶ 24.  Some women were forced to have sex with up to 20 men per day.  Id. ¶ 26.  The presentence investigation report further details the horrific abuses that White brought upon his victims.  See id. ¶¶ 13-43.

White's personal history and characteristics are fairly unremarkable.  He is a 46-year-old man who was raised by his mother until his biological father entered his life when he was approximately 7 or 8 years old.  See id. ¶ 100.  At the time of sentencing, White reported close relationships with both of his parents.  Id. ¶¶ 101-102.  White is single and has five children from multiple relationships.  See id. ¶¶ 104-106.  He has no significant mental-health diagnoses or issues.  See id. ¶¶ 110-113.

In considering the purposes of sentencing, this Court reiterates its previous finding that a 156-month sentence is fair, just, and reasonable, and further finds that the sentence would be severely undermined by a reduction to time served.  Such a reduced sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from future crimes by the defendant.  See 18 U.S.C. § 3553 (a).  Such a reduction would also result in unwarranted sentencing disparities, particularly since White has already received a sentence below the 15-year statutory minimum sentence.  Id.

Finally, as to dangerousness, which is considered in conjunction with the need to

protect the public from future crimes by the defendant, this Court finds that White would pose a danger to the community if released. As detailed above, White brutalized women through physical force, threats, and intimidation, and forced them to work as indentured prostitutes. He also has past convictions for disorderly conduct, driving while impaired, and other offenses. See Presentence Investigation Report, ¶¶ 72-76. This Court therefore concludes that White poses a danger if released at this time.

Accordingly, this Court finds that consideration of the § 3553 (a) factors outweighs any extraordinary and compelling reasons for a sentence reduction.

## IV. CONCLUSION

For all of the reasons stated above, this Court finds that a sentence reduction (compassionate release) under 18 U.S.C. § 3582 (c)(1)(A)(i) is not warranted. White's motion will therefore be denied.

## V. ORDERS

IT HEREBY IS ORDERED, that White's Motion for Compassionate Release (Docket No. 166) is DENIED.

FURTHER, that the Clerk of Court is DIRECTED to send a copy of this decision to White at his correctional institution of record.

SO ORDERED.

Dated:     September 15, 2022
           Buffalo, New York

                                             s/William M. Skretny
                                             WILLIAM M. SKRETNY
                                             United States District Judge